**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DAVID WORSTELL                                                          PLAINTIFF

v.                                  **4:08CV0579-WRW**

3M COMPANY
(f/n/a MINNESOTA MINING                                          DEFENDANT/
AND MANUFACTURING COMPANY)                      THIRD-PARTY PLAINTIFF

v.

RAIL LINK, INC.                                          **THIRD-PARTY DEFENDANT**

**ORDER**

Pending is Rail Link, Inc.'s Motion for Summary Judgment (Doc. No. 23). 3M Company

has responded.[1] For the reasons set out below, Rail Link, Inc.'s Motion is GRANTED in part and

DENIED in part.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[2]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[3]

---

[1]Doc. No. 31.

[2]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[4]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[5]  I must view the facts in the light most favorable to the party opposing the motion.[6]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[7]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[8]

## II. BACKGROUND

3M Company ("3M") is a corporation that mines and processes aggregate rock, and manufactures roof shingle granules and other related products.[9] 3M owns and operates mining

---

[4]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[5]*Id.* at 728.

[6]*Id.* at 727-28.

[7]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[8]*Anderson*, 477 U.S. at 248.

[9]Doc. No. 24-2.

and manufacturing facilities in Little Rock, Arkansas.[10]  There are railroad tracks and switches at 3M's mining and manufacturing facilities, and the materials for processing at the facilities are moved by rail cars on the railroad tracks.[11] Rail Link, Inc. ("Rail Link") provides railroad switching services, railroad track maintenance, and other related services.[12] On June 1, 2000, 3M and Rail Link entered into a "Railroad Switching, Railroad Track Maintenance and Routine Railcar Maintenance Agreement" ("Agreement"), under which Rail Link was to perform rail switching and other services for 3M.[13]

The Agreement provides, among other things that: (1) 3M will be solely liable for losses, costs, or expenses -- including reasonable attorney's fees -- that result from 3M's negligence or breach of the Agreement; (2) Rail Link will be solely liable for losses, costs, or expenses -- including reasonable attorney's fees -- that result from Rail Links's negligence or breach of the Agreement; and (3) in the case of 3M's and Rail Link's joint negligence, that 3M and Rail Link will each bear losses costs, or expenses -- including reasonable attorney's fees -- to the extent that each is determined negligent by agreement between 3M and Rail Link, or by the final judgment of a court.[14] Under the Agreement, 3M must indemnify Rail Link for liability, losses,

---

[10]*Id.*

[11]Doc. Nos. 24-2, 38.

[12]Doc. No. 24-2.

[13]*Id.*

[14]Doc. No. 24-2. The Agreement also provides that if either 3M or Rail Link is jointly negligent with any other party, that 3M or Rail Link will be responsible for the liability only to the extent of 3M's or Rail Link's negligence, as determined by the final judgment of a court of law.

costs, or expenses that were the result of the negligence of 3M, and Rail Link must indemnify 3M for liability, losses, costs, or expenses that were the result of the negligence of Rail Link.[15]

Plaintiff, a Rail Link employee, worked as a switchman on 3M's railroad tracks in Little Rock.[16] Around June 30, 2006, Plaintiff fell into the wheels of the moving train that he was inspecting, and his right foot was amputated.[17]

In December, 2007, Plaintiff settled his claim against Rail Link.[18] Under the Limited and Partial Settlement Agreement and Release ("Settlement and Release"), Plaintiff released all claims against Rail Link related to the accident for the consideration of $300,000.[19] 3M apparently was invited to join the settlement talks, but did not participate.[20] After the settlement was final, Rail Link gave 3M a copy of the Settlement and Release.[21]

In 2008, Plaintiff filed a Complaint against 3M alleging negligence.[22] Plaintiff maintains that the allegations in his Complaint are independent claims against 3M, and that his claims do not involve Rail Link.

---

[15]*Id.*

[16]Doc. No. 38.

[17]*Id.*

[18]Doc. No. 24-3.

[19]*Id.*

[20]Doc. No. 33.

[21]*Id.*

[22]Doc. No. 2. Plaintiff filed an Amended Complaint on February 17, 2009. Doc. No. 38.

3M then filed a Third-Party Complaint against Rail Link.[23] 3M contends that Plaintiff's allegations against 3M flow back to Rail Link under the Agreement; thus, Plaintiff's claims are, in effect, claims against Rail Link.[24] 3M maintains that because Plaintiff's claims are against Rail Link, then any damages a jury may award Plaintiff in Plaintiff's case against 3M actually stem from Rail Link's negligence.[25] Since under the Agreement Rail Link must indemnify 3M against losses, costs, or expenses[26] that result from Rail Links's negligence, 3M asserts that Rail Link must indemnify 3M for all damages 3M may be ordered to pay Plaintiff.[27]

Rail Link filed a Motion for Summary Judgment in connection with 3M's indemnity claim. Rail Link asserts that: (1) Plaintiff's claims against 3M are for 3M's negligence; (2) Rail Link is not obligated under the Agreement to indemnify 3M for 3M's negligence; and (3) since Plaintiff can have no claims against Rail Link after the settlement, Rail Link is not further liable.

## III. DISCUSSION

A contract of indemnity is to be construed in accordance with the rules for the construction of contracts generally.[28] If there is no ambiguity in the language of the contract, then there is no need to resort to rules of construction.[29] However, under Arkansas law,

---

[23]Doc. No. 7.

[24]Doc. No. 24.

[25]Doc. No. 31.

[26]Including reasonable attorney's fees.

[27]Doc. No. 7.

[28]*Ark. Kraft Corp. V. Boyed Sanders Constr. Co.*, 298 Ark. 36, 38 (1989) (citing *Pickens-Bond Const. Co. v. NLR Electric Co.*, 249 Ark. 389 (1970)).

[29]*Id.*

5

indemnity agreements are strictly construed against the party seeking indemnification.[30] An indemnitor's intention to bind itself for the negligence of an indemnitee for the indemnitee's own negligence must be unequivocally manifested.[31] While no particular words are required, the intention of an indemnitor to undertake such an extraordinary obligation must be expressed in clear and unequivocal terms.[32]

The preliminary issue is whether Plaintiff's Amended Complaint asserts claims based solely on 3M's negligence.

**A. Plaintiff's Allegations in Count I**

Count I of Plaintiff's Amended Complaint alleges 3M negligently retained Rail Link.[33] The allegations are based on 3M's acts or omissions and, not on duties that Rail Link was required to perform under the Agreement.[34] Therefore, there is no basis for 3M's indemnity claim against Rail Link in connection with Plaintiff's Count I.

---

[30]*Chevron U.S.A., Inc. v. Murphy Exploration & Production Co.,* 356 Ark. 324, 330 (2004).

[31]*Hood v. Welch*, 249 Ark. 1159, 1164 (1971).

[32]*Ark. Kraft Corp.,* 298 Ark. at 39.

[33]Doc. No. 38. In Count I, Plaintiff alleges that 3M negligently retained Rail Link because 3M: (1) failed to exercise due diligence in determining the safety record and safety performance of Rail Link; (2) failed to obtain from MSHA and the Federal Government the safety records, safety history, and criminal background of Rail Link and its employees; (3) failed to audit, monitor, or otherwise ensure Rail Link's adherence to Safety Rules and Regulations; (4) retained an incompetent and injury-plagued company that 3M knew or should have known would work unsafely, inadequately train its workers, and submit falsified safety and training records to the Federal Government; and (5) allowed Rail Link to conduct unsafe operations upon its property.

[34]Doc. No. 24-2.

### B. Plaintiff's Allegations in Count II

Count II of Plaintiff's Amended Complaint alleges general negligence on the part of

3M.[35] However, Plaintiff's allegations in Count II appear to be, at least in part, duties that Rail

Link had an obligation to perform under the Agreement.[36] For example, Plaintiff alleges that 3M

failed to move rock and debris from the ballast where Plaintiff worked.[37] Rail Link, however,

had the duty, under Paragraph 2.5 of the Agreement, to inspect and maintain Plaintiff's work

area.[38] Plaintiff also alleges that 3M failed to require Rail Link to train the Plaintiff for the task

of his job.[39] But, Paragraphs 2.1 and 2.4 of the Agreement state that Rail Link had the duty to

ensure that all Switching Services were performed "in a prompt, safe and efficient manner in

compliance with all applicable federal, state, and local laws, rules, regulations, directives and

orders governing such conduct."[40] Further, Paragraphs 2.2 and 2.3 of the Agreement place a duty

---

[35]Doc. No. 38. In Count II, Plaintiff alleges that 3M acted negligently in that 3M: (1) failed to illuminate Plaintiff's work area; (2) failed to provide the Plaintiff with a safe means of access to railroad tracks and equipment; (3) failed to indoctrinate Plaintiff with safety rules and safe work procedures; (4) failed to inspect Plaintiff's work place; (5) failed to provide Plaintiff with site specific hazardous awareness; (6) failed to remove rock and debris from the ballast upon which Plaintiff was required to work; (7) failed to provide a firm, level surface of ballast for Plaintiff to complete his task; (8) failed to require Rail Link to train the Plaintiff for the task of his job; (9) failed to ensure that Plaintiff and his co-workers were trained in a non-negligent, non-fraudulent manner; (10) failed to audit the training and safety records of the Plaintiff and Rail Link employees; (11) violated 30 C.F.R §§ 57.17001, 57.11001, 56.18006, 56.18002, 46.12, 22.825(a), 825; and (12) violated 49 C.F.R. §§ 251.301, 213.103, 217.9, 217.11.

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Id.*

[40]*Id.*

on Rail Link to ensure that its Switching Personnel abide my 3M's operating and safety rules.[41]

There is a genuine issue of material fact in connection with indemnity with respect to the allegations in Plaintiff's Count II. If a jury finds 3M negligent in connection with duties that really were Rail Link's under the Agreement, then that would trigger indemnity under the Agreement. If 3M presents evidence of Rail Link's negligence and the jury finds that Rail Link's acts or omissions contributed to Plaintiff's injury, it seems to me that finding would trigger indemnity under the Agreement -- for some portion of attorney's fees and costs of litigation, if for nothing else.

## CONCLUSION

3M has no basis on which to claim indemnity in connection with the allegations set out in Plaintiff's Count I. Rail Link's Motion for Summary Judgement (Doc. No. 23) is GRANTED to the extent that 3M's indemnity claim fails with respect to Plaintiff's Count I. Summary judgment is otherwise DENIED.

IT IS SO ORDERED this 9th day of March, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[41]Doc. No. 38.